Manuel María Molina, Plaintiff and Appellant, v. Celedonio Molina, Defendant and Appellee.

No. 7752.—Argued November 17, 1938.—Decided February 8, 1939.

Luis Mercader for appelant.  Reyes Delgado & Mercado for appellee.

Mr. Justice Travieso delivered the opinion of the Court.

In this case of unlawful detainer at sufferance the complainant alleges that he is the owner of a farm which he bought from Domingo Mena by public deed of August 18, 1934; that Mena in his turn acquired it by purchase at a public sale had by virtue of a judicial proceeding to collect a promissory note executed by the former owner of the farm, the defendant Celedonio Molina; and that the latter retains the farm without paying any rent whatsoever.

After a general denial of the facts set forth in the complaint the defendant alleges that he and Domingo Mena agreed that Mena should buy the farm at the public sale, promising to return it to the defendant Celedonio Molina as soon as the latter should pay Mena the amount paid by him at the auction sale, plus legal interest; that when the time to redeem was up, the complainant Manuel María Molina, brother of defendant, lent the latter the necessary money

to redeem the farm; that it was agreed between them that the title would pass to the complainant Manuel María Molina and that the defendant would continue in possession of the farm, working it, and would allow the crops of the same —sugar cane and vegetables—to be delivered to Central Cambalache in the name of the complainant, who would apply the price of said products to the payment of the sum lent by him to the defendant; that according to the agreement, the complainant has collected already all that was owed to him by the defendant; that the defendant has never left the farm and that it belongs exclusively to him; that the defendant is the head of a family, being married and having two minor children, with whom he has always lived and actually lives in the farm in question and where they have established their homestead.

The case was heard before the District Court of Arecibo and judgment was rendered dismissing the complaint because the court understood that an unlawful detainer proceeding is not the adequate proceeding to decide such controversy between the parties. In its opinion and judgment the lower court stated as follows:

"The evidence introduced at the trial as a whole presents a complicated situation which if we were to decide in this proceeding we would go beyond the summary bounds of the same.

"The defendant Celedonio Molina was sued in the municipal court and, as a consequence of an attachment in foreclosure, the farm object of this unlawful detainer suit was put up at public auction. Then Molina spoke to Domingo Mena so that he should purchase it for a small sum for the purpose, according to his testimony, that Mena should collect from the crops the amount of the purchase and so that Molina should not lose the farm. Mena says it is true that he talked to him about the sale, but that he merely consented to allow him to remain in the farm. The truth is that there must have been some agreement between them when Molina continued living and working the farm.

"The history of Celedonio Molina, in the second chapter, is that it was later agreed upon that Mena should give the title to his brother Manuel, who is the complainant in this case, and that the price should

216

be paid in instalments, but with the idea that his brother should be liable and should pay with the crops of the farm and that after paying Mena, he should return it to the defendant Celedonio. Mena, as well as Manuel Molina, deny this, but the truth is that Manuel did not pay out one cent as the price of the property and that the payments that he made were money obtained from the products of the farm. Also, the defendant continued in the farm and since a year ago not only is he in possession thereof, but he has entered into a contract and delivered cane, produced and cut by him, to Central Cambalache.

"It is true that the title of Mena and Manuel Molina does not show anything else than an absolute sale, but the facts and even certain answers of the witnesses of the complainant, force us to the conclusion that the defendant is not on the property as a mere possessor at sufferance.

"It may be that in a declaratory action the defendant will have to leave the farm, even accepting as true that he does not have a homestead, but some right may be given to the defendant by virtue of the relation between the parties. The more we look at the evidence the more we are convinced that some equitable arrangement can be made by both brothers which could not be decided in this summary proceeding, since if we render judgment in favor of the complainant, we would have to accept that the defendant is on the property without any right whatsoever."

To uphold his appeal the complainant appellant alleges as errors committed by the lower court (*a*) having decided that an unlawful detainer suit at sufferance does not lie and (*b*) having erroneously weighed the evidence, deducing from it conclusions contrary to law. Both assignments of error can be considered together.

We have no doubt whatsoever that the complainant satisfactorily proved that he has a good and sufficient title which gives him the right to the possession of the immovable and to eject therefrom the person who unlawfully retains the possession. The title of the complainant is the same which the defendant used to have before his farm was sold at public auction to satisfy a judgment rendered against him. The documentary evidence establishes a prima facie case in favor of the complainant.

Let us examine the testimony of the witnesses. The complainant testified that he bought the farm in 1935; that the defendant is his brother and lives on the farm without paying anything and without having any contract of lease; that he has not ejected the defendant because it is his brother, but that before filing the unlawful detainer suit he gave him notice to leave. In the cross-examination he said: that the defendant has a right to the house that is on the farm; that when he bought from Mena he went to work the farm in 1935 and worked it until 1936 and that he stopped working it because the defendant took out a dagger and told him that if he came on the property again he would cut him, and it was then that he left; that he paid $200 for the farm to Mena in his house from 1935 on; that he guaranteed the payments with three *cuerdas* of land which he owns; that he did not give Mena any money on the day of the sale, but that he did give it to him when it fell due, which was a year later, because then he had to go and work the property as he was in need; that he cultivated the property himself and with peons and oxen; that he got the money to pay Mena the price of the farm from his work in the farm and from his own money which he had to invest therein, from his work; that his brother, the defendant, never worked on the farm; that he worked in the *hacienda;* that before he bought the farm his brother, the defendant, offered to pay Mena $200 for the farm and when the time fell due and he could not pay it he told the complainant: ''Before anyone else buys, why don't you buy it and leave me on the farm''; that he bought the farm and he had to leave him there because he was his brother; that it is not true that he guaranteed any debt of his brother to Mena as the price of the farm; that after leaving his brother there the latter made himself the ·owner and tried to take the farm away from him and took the crops of the year 1936 for himself; that the witness used to pay Mena from year to year according to what the farm produced, as it is a farm which can not

be immediately worked; that after buying the farm in 1929 Mena continued working on the farm and planted cane and later leased it to the Centeno brothers, that in the meantime the defendant continued living in the house, which has nothing to do with the farm; that when he bought the farm he took charge of it immediately and he had to replant it until he had it in good condition; that he planted cane, 400 banana trees and *yautías;* that the defendant continued living in the house and worked on the farm for a daily wage; that his brother violently took over the farm in 1936 and that he did not interfere with him because it was his brother and to avoid having his brother kill someone; that the witness still owes Mena $75 of the purchase price agreed upon; that his brother, the defendant, since he took possession violently of the farm, has not worked, and the only thing that he has done is to collect the crops and take over what the complainant planted. This testimony is corroborated substantially by that of the witness Eustaquio Rosario.

The defendant testified that when the farm was put up at public auction he called Mena and told him: ''Buy the farm and I will pay you for it''; that Mena agreed that the defendant should pay him a little at a time with interest and that then he, the defendant, leased the farm to the Centenos for $10; that the Centenos paid him a year in advance and that he gave to Mena the money that they paid him, but did not ask him for a receipt.

As evidence in rebuttal the complainant brought witness Domingo, who testified that he bought the farm at the public sale; that the defendant owed him some $40; that one night the defendant came to him and told him: ''The property is going to be foreclosed tomorrow, you purchase it before anybody else does, because you have treated me well, because I want.you to collect your money and you can let me stay there if you wish''; that the witness answered him: ''I will purchase it and I will leave you there'' and the defendant remained there in his house; that he did not make any agree-

ment with the defendant; that the witness continued working the farm where he planted cane; that he leased two *cuerdas* to Centeno who paid him the amount of the lease; that the cane was planted by Eustaquio Rosario, the witness paying the expenses; that afterwards the defendant said that nobody should come on the farm because he would cut his neck, since the farm was his; that he offered the defendant the farm if he would give him $200 by the end of July, but that time passed and the defendant neither paid him nor came to see him; that defendant's brother came and offered him $300, of which he still owes him $75; that the defendant had nothing to do with that transaction; that after purchasing the property the complainant continued working on it, planting cane, coffee and bananas.

In our opinion there is no conflict of titles in the present case. The mere allegations of the defendant, which have not been corroborated by any evidence whatsoever and have been controverted by the evidence of the complainant and his two witnesses, are not of themselves sufficient proof of any title in favor of the defendant. See *Pérez* v. *Castro,* 52 P.R.R. ——. The lower court erred in dismissing the complaint.

For the above stated reasons the judgment appealed from is reversed and the case remanded to the lower court for further proceedings not inconsistent with this opinion.

Mr. Chief Justice Del Toro took no part in the decision of this case.

Mr. Justice Hutchison dissented.